Cite as 2025 Ark. App. 603

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-788

|  |  |
|---|---|
| LAVONDA HAWKINS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered December 10, 2025<br><br>APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT<br>[NO. 15CR-22-180]<br><br>HONORABLE JERRY DON RAMEY, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Lavonda Hawkins was convicted by a Conway County jury of possession of methamphetamine with purpose to deliver; possession of marijuana with purpose to deliver; possession of drug paraphernalia; and simultaneous possession of drugs and firearms. She appeals her convictions, claiming that the State failed to prove that she constructively possessed the contraband items. After reviewing the record before us, we find sufficient evidence to support her convictions. Accordingly, we affirm.

This case originates from a search of a residence in which controlled substances, drug paraphernalia, and a firearm were recovered. As a result of this search, Hawkins was charged in June 2022 with multiple drug- and firearm-related offenses. The information was later amended in May 2024 and charged Hawkins as a habitual offender with possession of methamphetamine with purpose to deliver; possession of marijuana with purpose to deliver;

possession of drug paraphernalia; possession of a firearm by certain persons; simultaneous possession of drugs and firearms; and theft by receiving. The State also indicated its intent to seek an enhanced sentence under Arkansas Code Annotated section 5-64-411 (Repl. 2024) because the crimes were committed approximately 275 feet from a child-care facility or school. Before trial, the State severed the charge of possession of a firearm by certain persons and indicated it was dismissing the theft-by-receiving charge.[1] A jury trial was held on the remaining charges.

Among the witnesses who testified in the State's case-in-chief, Officer Joseph Roch, a patrolman with the Morrilton Police Department who was on patrol on March 3, 2022, testified that he saw a vehicle driven by Lavonda Hawkins enter an intersection without stopping at a stop sign. As a result, he began to follow her and twice saw her turn left at an intersection without using her turn signal. At that point, he activated his lights and proceeded to pull her over. Hawkins complied and pulled into the driveway of a home at 407 East Branch Street—a home owned by Hawkins's mother but that Officer Roch associated with Hawkins.

Hawkins stopped and exited her vehicle. However, before Officer Roch was able to interact with her, Terrance Jefferson came out of the house and confronted him, yelling and screaming that he was harassing them. Jefferson then went back into the house, returned

---

[1]An amended information dismissing both counts (and an additional count from the original information) was filed in June 2024.

with a cell phone, and began recording the encounter.[2] Officer Roch contacted other officers for backup.

Officer Roch then ran Hawkins's identification card through the system, which revealed a search waiver on file. A search of Hawkins's car revealed nothing illegal. At that point, officers decided to search the residence. Detective Watkins asked Hawkins which door she normally used to go in and out of the house, and Hawkins responded that they were not searching *her* house without a search warrant. Officers, however, entered the home by means of the search waiver on file.

In the back bedroom of the home, the officers found a handgun between the bed's mattress and box springs. A baggie of methamphetamine was found on the nightstand, and a loaded magazine was found on the dresser. Both were in plain view. Male clothing and approximately $7500 were found inside a dresser drawer. Multiple scales and unused baggies along with other paraphernalia, including multiple grinders and pipes, were also found in the bedroom. Finally, airsoft rifles were found under the bed. In addition to the contraband, officers found photographs of Hawkins and her children on the wall of the bedroom. The bedroom closet contained both men's and women's clothing. Pill bottles bearing Hawkins's name were found in the adjoining master bathroom. A strong odor of marijuana then led to the discovery of suspected marijuana in what appeared to be a child's bedroom. Finally, on

---

[2]Jefferson was arrested for obstruction of governmental operations, disorderly conduct, and other drug charges. His trial on the drug charges was joined with Hawkins's, but his convictions are not the subject of this appeal.

a table in the dining room, officers discovered loose marijuana and a rolled marijuana cigar. No fingerprints were taken from any of the items collected.

On cross-examination of Officer Roch, Hawkins questioned his testimony associating her with the East Branch home. Officer Roch testified that, although he did not know who actually owned the home, he found that fact irrelevant because Hawkins could have been renting it. He also testified that Hawkins had told him the house was hers and informed him that they were not going to search *her* house. Additionally, he reported that Jefferson had complained at the scene that the police were illegally searching Hawkins's home. He further testified that he associated that address with her because he had seen her vehicle there on multiple occasions at all hours of the day and night. He admitted, however, that it would not be unusual for Hawkins's mother to have pictures of Hawkins and her children in the home.

At the conclusion of the State's case, Hawkins timely asserted her motions for directed verdict and argued that the State failed to present sufficient evidence linking her to the contraband found in the home. She argued in part that the home is owned by her mother, that the East Branch address is not the address listed on her ID, and that there was no evidence that that address is the one listed on the search waiver.

The circuit court denied her motions, and the jury ultimately found her guilty of simultaneous possession of drugs and firearms; possession of methamphetamine with purpose to deliver; possession of marijuana with purpose to deliver; and possession of drug

paraphernalia. Hawkins filed a timely notice of appeal. On appeal, she challenges the sufficiency of the evidence to support her convictions.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is whether the jury's verdict is supported by substantial evidence; evidence, whether direct or circumstantial, is sufficient to support a conviction if it compels a conclusion and passes beyond speculation or conjecture. *Smith v. State*, 2022 Ark. App. 422, 654 S.W.3d 701. In making such a determination, we view the evidence in the light most favorable to the State, considering only the evidence that supports the guilty verdict. *Id.* Witness credibility is for the jury alone to determine; the jury may believe all or part of any witness's testimony and may resolve inconsistencies or conflicts in the evidence. *Wray v. State*, 2023 Ark. App. 465, 678 S.W.3d 431.

Hawkins's sufficiency argument as to all four convictions is that the State failed to prove that she constructively possessed each of the four items of contraband—the firearm, the methamphetamine, the marijuana, or the drug paraphernalia. More specifically, she argues that the house was jointly occupied and that there was insufficient evidence linking her to the contraband in question. We disagree.

When possession of contraband is an element of an offense, the State is not required to prove literal physical possession. *Williams v. State*, 2025 Ark. App. 92, 704 S.W.3d 916. Constructive possession is sufficient. *Id.* To prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. *Id.* Constructive possession may be established by circumstantial evidence and can be

5

inferred where the contraband is found in a place exclusively accessible to the defendant and subject to his control. *Id.* Further, constructive possession may be inferred when the contraband is in the joint control of the accused and another person. *Id.*

Joint occupancy, however, does not by itself establish joint possession; there must be some additional factor linking the accused to the contraband. *Id.* For joint occupancy, the State must prove two additional elements: (1) the accused exercised care, control, and management over the contraband; and (2) the accused knew the matter possessed was contraband. *Id.* An accused's control over, and knowledge of, the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's suspicious behavior. *Id.* Location of the contraband in close proximity to the accused has been held to be a sufficient linking factor to support a constructive-possession conviction. *Id.* Moreover, contraband found in a communal area of a residence is a linking factor establishing constructive possession. *Id.* Items in a room, such as documents bearing the accused's name, clothing that fits the accused, and the accused's presence in that room are sufficient proof of constructive possession. *Id.*

On appeal, as below, Hawkins claims that there was insufficient evidence to prove that she exercised care, control, and management over the contraband in question. She notes that there was evidence that the house belongs to her mother and that a different address is listed on her drivers' license. She also places emphasis on the fact that she was not inside the home at the time of the search and that Jefferson was. However, viewing the evidence in the

6

light most favorable to the State, as we must do, there was sufficient evidence to support the jury's verdict.

Here, there was testimony that both Hawkins and Jefferson had referred to the house as hers before the search, and Officer Roch testified that he had seen Hawkins's car at the residence on numerous occasions at all hours of the day and night over an extended period of time. Inside the home, the handgun, the methamphetamine, and the drug paraphernalia were found in what could be described as the primary bedroom. While the handgun was found between the mattress and box spring, a loaded magazine to the handgun was found in plain view on the dresser. A silver digital scale and a baggie of methamphetamine were found on the nightstand. Multiple other scales, pipes, baggies, and cash were also found inside the bedroom. The jury was informed that there was women's clothing in the closet of that bedroom, pictures of Hawkins and her children hung on the bedroom wall, and prescription bottles bearing Hawkins's name were found in the adjoining primary bathroom. As for the marijuana, officers found marijuana, both loose and rolled into a cigar, in plain view in a common area of the home—a table in the dining room next to children's homework. Officer Roch also testified that there was a strong odor of marijuana in the home that led to the discovery of marijuana in a closet in what appeared to be a child's bedroom. These facts, taken together, are sufficient to link Hawkins to the contraband in question. As such, there was sufficient evidence to support the jury's finding that Hawkins constructively possessed those items.

We note that, in making her sufficiency argument, Hawkins appears to challenge the basis for the search; that is, that the search was based on law enforcement's belief that Hawkins lived there—a belief she contends was not supported by the evidence. To the extent she challenges the search itself, her argument is not preserved for appeal since there is no evidence in the record that Hawkins moved to suppress the evidence found during the warrantless search. Our court will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *See Lewis v. State*, 2017 Ark. App. 442, at 10, 528 S.W.3d 312, 319.

For the foregoing reasons, we affirm.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.